## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

IN RE:   BOSTON SCIENTIFIC CORP.,
          PELVIC REPAIR SYSTEM
          PRODUCTS LIABILITY LITIGATION

                                        MDL No. 2326

---------------------------------------------------------------

THIS DOCUMENT RELATES TO THE FOLLOWING CASE:

     *Nancy Hay-Rewalt & Ronald Rewalt*
     *v. Boston Scientific Corp.*                No. 2:12-cv-9912

### MEMORANDUM OPINION AND ORDER
**(Defendant's Motion for Summary Judgment Based on Statute of Limitations)**

Pending before the court is the defendant's Motion for Summary Judgment Based on Statute of Limitations ("Motion") [Docket 28]. For the reasons set forth below, the Motion is **GRANTED**.

### I.     Background

This case resides in one of seven MDLs assigned to me by the Judicial Panel on Multidistrict Litigation concerning the use of transvaginal surgical mesh to treat pelvic organ prolapse ("POP") and stress urinary incontinence ("SUI"). In the seven MDLs, there are more than 70,000 cases currently pending, approximately 15,000 of which are in the Boston Scientific Corp. ("BSC") MDL, MDL 2326. In an effort to efficiently and effectively manage this massive MDL, I decided to conduct pretrial discovery and motions practice on an individualized basis so that once a case is trial-ready (that is, after the court has ruled on all *Daubert* motions, summary judgment motions, and motions *in limine*, among other things), it can then be promptly transferred or remanded to the appropriate district for trial. To this end, I ordered the plaintiffs

and defendant to each select 50 cases, which would then become part of a "wave" of cases to be prepared for trial and, if necessary, remanded. (*See* Pretrial Order # 65, *In re: Boston Scientific Corp. Pelvic Repair Sys. Prods. Liab. Litig.*, No. 2:12-md-002326, entered Dec. 19, 2013, *available at* http://www.wvsd.uscourts.gov/MDL/boston/orders.html). This selection process was completed twice, creating two waves of 100 cases, Wave 1 and Wave 2. Ms. Hay-Rewalt and Mr. Rewalt's (collectively "the plaintiffs") case was selected as a Wave 2 case by the plaintiffs.

On June 5, 2007, Ms. Hay-Rewalt was surgically implanted with the Advantage Pelvic Floor Repair Kit (the "Advantage"), a product manufactured by BSC, to treat her POP and SUI. (BSC's Mot. for Summ. J. & Mem. of Law in Supp. Based on Statute of Limitations ("Mem. in Supp.") [Docket 28], at 3; Pl. Fact Sheet [Docket 28-2], at 5). She received her surgery at a hospital in Grosse Pointe, Michigan. (Pls.' Short Form Compl. [Docket 1] ¶ 11). Her surgery was performed by Dr. John Knapp. (*Id.* ¶ 12).

Ms. Hay-Rewalt claims that as a result of implantation of the Advantage, she has experienced injuries including pelvic pain, dysuria, and dyspareunia. (Mem. in Supp. [Docket 28], at 3; Pl. Fact Sheet [Docket 28-2], at 6). She claims that she began feeling pain about one month after the surgery. (Pl. Fact Sheet [Docket 28-2], at 7). She had dyspareunia before the surgery, but the pain increased after it. (Hay-Rewalt Dep. [Docket 60-3], at 230:20–232:2).

On July 2, 2007, she saw Dr. John Knapp, her implanting surgeon, and Dr. Knapp noted a hematoma on her bladder. (Dr. Knapp Office Visit Notes [Docket 60-2]). Dr. Knapp testified that one would anticipate having pain after surgery. (Knapp Dep. [Docket 60-1], at 74:10–16). He also testified that the hematoma, which he measured to be 10 centimeters during Ms. Hay-Rewalt's visit on July 30, 2007, could possibly be the cause of her continued pain in June, July,

and August 2007. (*Id.* at 74:19–75:6; Dr. Knapp Office Visit Notes [Docket 60-2]). Dr. Knapp decided to let the hematoma resolve itself spontaneously. (Dr. Knapp Office Visit Notes [Docket 60-2]). Ms. Hay-Rewalt testified that at her visit with Dr. Knapp on July 30, 2007, she complained of vaginal pain. (Hay-Rewalt Dep. [Docket 60-3], at 219:19–220:1). She testified that Dr. Knapp told her that the pain would go away by October. (*Id.* at 220:2–5). However, Ms. Hay-Rewalt stated that she continued to experience dysuria after her visit with Dr. Knapp on July 30, 2007, and that the pain has continued "to this day." (*Id.* at 220:18–22). However, the intensity of the pain subsided within the first two months of her surgery. (*Id.* at 222:4–6). She recalled returning to Dr. Knapp in October because she continued to feel pain, and she was told that she should "give it more time and it will be better." (*Id.* at 222:19–223:16).

Ms. Hay-Rewalt claims that she continued to have pain even "[a]fter enough time had passed where I should have recovered from my mesh implant surgery." (Pl. Fact Sheet [Docket 28-2], at 7). She did not know what was causing her pain, but she "suspected the mesh was the problem." *Id.* Ms. Hay-Rewalt felt that she was not "getting the necessary direction from Dr. Knapp" and that she "needed a second opinion." (Hay-Rewalt Dep. [Docket 60-3], at 226:9–13). She was then referred to Dr. Shiva Maralani, a urologist, to whom she reported urethral pain and pressure in late 2007 or early 2008. (Hay-Rewalt Dep. [Docket 60-3], at 226:4–229:13). Ms. Hay-Rewalt also testified that Dr. Maralani discussed removing the Advantage, which would alleviate Ms. Hay-Rewalt's symptoms. (*Id.* at 234:9–17). Ms. Hay-Rewalt could not recall whether Dr. Maralani told her that the Advantage was causing the problems Ms. Hay-Rewalt was reporting. *(Id.* at 234:12–14).

Dr. Maralani referred Ms. Hay-Rewalt to Dr. Edward McGuire, another urologist. (*Id.* at 235:8–15). Ms. Hay-Rewalt testified that she reported to Dr. McGuire that she immediately had

problems with urethral pain after the Advantage implantation surgery. (*Id.* at 238:1–8). Dr. McGuire recommended a transvaginal urethrolysis and excision of the Advantage. (Letter from Edward J. McGuire, M.D., to Shiva J. Maralani, M.D. (Mar. 14, 2008) [Docket 60-4], at 3). On April 14, 2008, Ms. Hay-Rewalt underwent urethrolysis surgery to cut and release the Advantage sling. (April 14, 2008, Urethrolysis Operative Report [Docket 60-5], at 1–2). She recalled that she underwent a second procedure with Dr. McGuire in early January 2009 to remove the mesh that was embedded in her urethra. (Hay-Rewalt Dep. [Docket 60-3], at 257:13–258:9). Dr. McGuire told her that he would attempt to remove as much of the mesh as he could during the second surgery. (January 12, 2009, Operative Report [Docket 60-6], at 1).

After seeing a mesh litigation television commercial, Mr. Rewalt discussed with Ms. Hay-Rewalt about contacting an attorney.[1] (Hay-Rewalt Dep. [Docket 60-3], at 45:3–24; Rewalt Dep. [Docket 60-7], at 23:10–20).

The plaintiffs filed suit on December 30, 2012. Ms. Hay-Rewalt brings the following claims against BSC: strict liability for design defect, manufacturing defect, and failure to warn; negligence; breaches of express and implied warranties; and punitive damages. (Pls.' Short Form Compl. [Docket 1] ¶ 13). Additionally, Mr. Rewalt brings a claim of loss of consortium against BSC. (*Id.*). In the instant motion, BSC argues that each of the plaintiffs' claims is barred by Michigan's statute of limitations, and consequently, the court should grant summary judgment in favor of BSC and dismiss the plaintiffs' case.

---

[1] It is unclear when the plaintiffs saw the television commercial. Ms. Hay-Rewalt stated in her deposition, taken on May 22, 2014, that after seeing the commercial, they first contacted an attorney sometime "within the last two years." (Hay-Rewalt Dep. [Docket 60-3], at 45:3–46:1). Mr. Rewalt stated that he noticed the television commercial in "early 2013 to the best of my recollection." (Rewalt Dep. [Docket 60-7], at 23:12–16). However, that clearly cannot be correct, as the plaintiffs filed suit on December 30, 2012—in other words, before 2013. (*See* Pls.' Short Form Compl. [Docket 1]).

4

## II.      Legal Standards

### A.      Summary Judgment

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987); *Ross v. Comm'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *abrogated on other grounds*, 490 U.S. 228 (1989).

5

### B.     Choice of Law

Under 28 U.S.C. § 1407, this court has authority to rule on pretrial motions in MDL cases. The choice of law for these pretrial motions depends on whether they concern federal or state law:

> When analyzing questions of federal law, the transferee court should apply the law of the circuit in which it is located. When considering questions of state law, however, the transferee court must apply the state law that would have applied to the individual cases had they not been transferred for consolidation.

*In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 97 F.3d 1050, 1055 (8th Cir. 1996) (internal citations omitted). To determine the applicable state law for a dispositive motion based on the statute of limitations, I generally refer to the choice-of-law rules of the jurisdiction where the plaintiff first filed her claim. *See In re Air Disaster at Ramstein Air Base, Ger.*, 81 F.3d 570, 576 (5th Cir. 1996) ("Where a transferee court presides over several diversity actions consolidated under the multidistrict rules, the choice of law rules of each jurisdiction in which the transferred actions were originally filed must be applied."); *In re Air Crash Disaster Near Chi., Ill.*, 644 F.2d 594, 610 (7th Cir. 1981); *In re Digitek Prods. Liab. Litig.*, MDL No. 2:08-md-01968, 2010 WL 2102330, at *7 (S.D. W. Va. May 25, 2010). However, if a plaintiff files her claim directly into the MDL in the Southern District of West Virginia, as the plaintiffs did in this case, I consult the choice-of-law rules of the state in which the implantation surgery took place. *See Sanchez v. Boston Scientific Corp.*, 2:12-cv-05762, 2014 WL 202787, at *4 (S.D. W. Va. Jan 17, 2014) ("For cases that originate elsewhere and are directly filed into the MDL, I will follow the better-reasoned authority that applies the choice-of-law rules of the originating jurisdiction, which in our case is the state in which the plaintiff was implanted with the product."). Ms. Hay-Rewalt received the Advantage implantation surgery in Michigan. Thus, the choice-of-law principles of Michigan guide this court's choice-of-law analysis.

The parties agree, as does this court, that these principles compel application of Michigan law to the plaintiffs' claims. Michigan courts follow what is essentially a rebuttable *lex fori* approach: Michigan law applies "unless a 'rational reason' to do otherwise exists." *Sutherland v. Kennington Truck Serv., Ltd.*, 562 N.W.2d 466, 471 (Mich. 1997) (quoting *Olmstead v. Anderson*, 400 N.W.2d 292 (Mich. 1987)). In determining whether a rational reason exists, a court undertakes a two-step analysis. First, a court "must determine if any foreign state has an interest in having its law applied. If no state has such an interest, the presumption that Michigan law will apply cannot be overcome." *Id.* However, if a foreign state does have an interest in having its law applied, a court "must then determine if Michigan's interests mandate that Michigan law be applied, despite the foreign interests." *Id.*; *see also Standard Fire Ins. Co. v. Ford Motor Co.*, 723 F.3d 690, 693 (6th Cir. 2013) (discussing Michigan's choice of law framework).

Here, the implantation surgery that allegedly resulted in Ms. Hay-Rewalt's injuries took place in Michigan. (Pls.' Short Form Compl. [Docket 1] ¶ 13). Ms. Hay-Rewalt is a Michigan resident, (*Id.* ¶ 4), and she received medical care for her alleged injuries in Michigan, (Pl. Fact Sheet [Docket 28-2], at 6). No other state has an interest in having its law applied. Thus, I apply Michigan's substantive law—including Michigan's statutes of limitations—to this case.

### III.    Discussion

The statute of limitations for a products liability action is three years. Mich. Comp. Laws § 600.5805(13) (2015). Although breach of warranty claims are typically subject to a four-year statute of limitations, *id.* § 440.2725(1), when such a breach is related to an underlying personal injury claim, the statute of limitations governing personal injury claims applies instead. *See Hertzler v. Manshum*, 200 N.W. 155, 157 (Mich. 1924) ("The implied warranty, so called,

reaching from the manufacturer of foodstuffs to the ultimate purchaser for immediate consumption is in the nature of a representation that the highest degree of care has been exercised, and a breach of such duty inflicting personal injury is a wrong in the nature of a tort . . . . Except in name . . ., it is the same thing as negligence. Plaintiff's case, in its last analysis, is bottomed on negligence."); *see also Roseville Plaza Ltd. P'ship v. U.S. Gypsum Co.*, 31 F.3d 397, 398 (6th Cir. 1994) (applying Michigan law and upholding dismissal of products liability action alleging, inter alia, breach of warranty under three-year statute of limitations); *Detroit Bd. of Educ. v. Celotex Corp.*, 493 N.W.2d 513, 519 (Mich. Ct. App. 1992) (same). Thus, a three-year statute of limitations governs all of Ms. Hay-Rewalt's claims. Furthermore, a claim for loss of consortium is a derivative claim. *Moss v. Pacquing*, 455 N.W.2d 339, 343 (Mich. Ct. App. 1990) ("[The plaintiff-husband's] claim for loss of consortium is clearly derivative of his injured spouse's claim. His recovery for loss of consortium stands or falls upon her recovery of damages."). Thus, the three-year products-liability statute of limitations also governs Mr. Rewalt's claim. *See id.*

The limitations period runs when the claim accrues. Mich. Comp. Laws § 600.5827. For a products liability claim, "the claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results." *Id.* Most states have a limitation on when the claim accrues through operation of the "discovery rule," which postpones accrual until a plaintiff discovers, or through the reasonable diligence should have discovered, his or her injury and the causal connection between the plaintiff's injury and the defendant's breach of duty. *See Jones v. Trs. of Bethany Coll.*, 351 S.E.2d 183, 185 (W. Va. 1986) (collecting cases); 3 J.D. Lee & Barry A. Lindahl, *Modern Tort Law: Liability and Litigation* § 27.112 (2d ed. 2014) (same); *see also, e.g.*, *Fox v. Ethicon Endo-Surgery, Inc.*, 110 P.3d 914, 920 (Cal. 2005); *Lawhon v.*

8

*L.B.J. Institutional Supply, Inc.*, 765 P.2d 1003, 1005 (Ariz. Ct. App. 1988); *Pennwalt Corp. v. Nasios*, 550 A.2d 1155, 1165 (Md. 1988). However, in *Trentade v. Buckler Automatic Lawn Sprinkler Co.*, the Michigan Supreme Court held that section 600.5827 of the Michigan Compiled Laws precluded any common-law discovery rule to delay accrual. 738 N.W.2d 664, 680 (Mich. 2007). Thus, unless the discovery rule is provided by statute, claims in Michigan are not subject to postponement under the discovery rule.

### A.    Breach of Warranty Claims

A statutory discovery rule exists in Michigan for breach of warranty claims. Section 600.5833 of the Michigan Compiled Laws provides that for a breach of warranty claim, "the claim accrues at the time the breach of the warranty is discovered or reasonably should be discovered." Mich. Comp. Laws § 600.5833 (2015). This is an objective standard: "[A] plaintiff's cause of action accrues . . . even if a subjective belief regarding the injury occurs at a later date." *Mott v. Abbott Labs.*, 506 N.W.2d 816, 825 (Mich. 1993). *Mott* also emphasizes that accrual begins when a plaintiff "discovers or, through the exercise of reasonable diligence, should have discovered that he has a *possible* cause of action," not when the plaintiff discovers or should have discovered the likely cause of his or her injuries. *Id.* at 826 (emphasis in original) (quoting *Bonney v. Upjohn Co.*, 342 N.W.2d 551, 554 (Mich. Ct. App. 1983)). In rejecting the "likely cause" standard in favor of "possible," which is a "lesser standard of information needed to provide knowledge of causation,"[2] *id.* at 827, the *Mott* court explained that once a plaintiff is "aware of an injury and its possible cause, the plaintiff is aware of a possible cause of action. We see no need to further protect the rights of the plaintiff to pursue a claim, because the plaintiff at this point is equipped with sufficient information to protect the claim." *Id.* at 828.

---

[2] The *Mott* court quoted *Black's Law Dictionary*'s definition of "possible": "Capable of existing, happening, being, becoming or coming to pass; feasible, not contrary to nature of things; neither necessitated nor precluded; free to happen or not; contrasted with impossible." *Id.* (quoting *Black's Law Dictionary* 1166 (6th ed. 1990)).

Although section 600.5833, part of the Revised Judicature Act, provides a discovery rule for breach of warranty claims, it appears to conflict with section 440.2725 of the Michigan Compiled Laws. Section 440.2725, part of Michigan's version of the Uniform Commercial Code, provides that "[a] cause of action accrues when the breach [of warranty] occurs, regardless of the aggrieved party's lack of knowledge of the breach." Mich. Comp. Laws § 440.2725(2) (2015). However, "[t]he manufacturer's duty to the consumer with regard to products which it puts into the stream of commerce does not generally arise out of a contract for sale, and is therefore not limited by the UCC[.]" *Southgate Cmty. Sch. Dist. v. W. Side Constr. Co.*, 247 N.W.2d 884, 886 (Mich. 1976). Indeed, "the consumer's right of action against a remote manufacturer is not dependent on the existence of contract or contract principles; product warranties adhere by implication of the law." *Id.* at 888; *see also Parish v. B.F. Goodrich Co.*, 235 N.W.2d 570, 573 (Mich. 1975) ("The provisions of UCC § 2-725 (a warranty is breached upon tender of delivery), while entirely satisfactory in a commercial setting, are inconsistent with principles developed by the courts in consumer actions against manufacturers for personal injury. . . . Adopting time of delivery, without regard to time of discovery, as the point of departure for statute of limitations purposes frequently will produce unsatisfactory results in personal injury cases."). Thus, because this is a products liability case grounded in tort law and not contract law, section 440.2725 is inapplicable, and instead section 600.5833 governs Ms. Hay-Rewalt's breach of warranty claims.

As noted earlier, Ms. Hay-Rewalt testified that Dr. Maralani discussed removing the Advantage, which would alleviate Ms. Hay-Rewalt's symptoms. (Hay-Rewalt Dep. [Docket 60-3], at 234:9–17). Even though Ms. Hay-Rewalt could not recall whether Dr. Maralani told her that the Advantage was causing the problems Ms. Hay-Rewalt was reporting, *(id.* at 234:12–14),

I **FIND** that a reasonable person, upon being told that the removal of the Advantage could alleviate that person's symptoms, would discover through the exercise of reasonable diligence that she has a *possible* cause of action against BSC. *See Mott v. Abbott Labs.*, 506 N.W.2d 816, 826 (Mich. 1993) (holding that accrual begins when a plaintiff "discovers or, through the exercise of reasonable diligence, should have discovered that he has a *possible* cause of action" (emphasis in original)); *see also id.* at 825 ("[A] plaintiff's cause of action accrues . . . even if a subjective belief regarding the injury occurs at a later date."). Although the record does not appear to provide an exact date regarding when Ms. Hay-Rewalt consulted with Dr. Maralani, Ms. Hay-Rewalt stated that she thought she saw Dr. Maralani in 2008.[3] (Hay-Rewalt Dep. [Docket 60-3], at 227:22). Thus, the statute of limitations began to run at that time in 2008. *See Mott*, 506 N.W.2d at 826. Ms. Hay-Rewalt had until 2011 to file suit. *See* Mich. Comp. Laws § 600.5803; *Hertzler v. Manshum*, 200 N.W. 155, 157 (Mich. 1924). Ms. Hay-Rewalt did not file suit until December 30, 2012, nearly two years after the statute of limitations had run. (*See* Pls.' Short Form Compl. [Docket 1]). Consequently, her breach of warranty claims are time barred.

Even assuming a reasonable person would not have discovered she had a possible cause of action at the time her doctor discussed removing the Advantage with her, the record provides ample evidence that a reasonable person would have discovered she had a possible cause of action shortly afterwards. For example, a reasonable person would have discovered she had a possible cause of action against BSC after undergoing surgery to release the Advantage sling on April 14, 2008. (*See* April 14, 2008, Urethrolysis Operative Report [Docket 60-5], at 1–2). Likewise, a reasonable person would have discovered she had a possible cause of action against BSC after undergoing surgery to remove mesh embedded in her urethra on January 12, 2009.

---

[3] However, Dr. Maralani wrote a letter dated December 17, 2007, to Dr. Kyung Soo Kim, Ms. Hay-Rewalt's cardiologist, stating that Ms. Hay-Rewalt "would benefit from the sling removal." (Letter from Shiva Maralani, M.D., to Kyong Soo Kim, M.D. (Dec. 17, 2007) [Docket 28-5]).

(*See* Hay-Rewalt Dep. [Docket 60-3], at 257:13–258:9). All of these dates are well outside of the statute of limitations.

The plaintiffs argue that they did not realize the Advantage could be the cause of Ms. Hay-Rewalt's problems until Mr. Rewalt saw a mesh litigation television commercial and discussed with Ms. Hay-Rewalt about contacting an attorney. (Pls.' Resp. in Opp'n to Def.'s Mot. for Summ. J. ("Resp. in Opp'n") [Docket 60], at 4–5; *see* Hay-Rewalt Dep. [Docket 60-3], at 45:3–24; Rewalt Dep. [Docket 60-7], at 23:10–20). This argument is unavailing. The relevant issue is not when Ms. Hay-Rewalt subjectively believed that she had a possible cause of action— it is when a reasonable person in her position would have discovered that she had a possible cause of action. *See Mott*, 506 N.W.2d at 825 ("[A] plaintiff's cause of action accrues . . . even if a subjective belief regarding the injury occurs at a later date."). A reasonable person would have discovered she had a possible cause of action well before the plaintiffs saw the television commercial.

The plaintiffs also argue that my decision in *Sanchez v. Boston Scientific Corp.*, No. 2:12-cv-05762, 2014 WL 202787 (S.D. W. Va. Jan. 17, 2014), is controlling. (*See* Resp. in Opp'n [Docket 60], at 6). That argument is equally unavailing. *Sanchez* was concerned with California law. California, unlike Michigan, requires that a plaintiff discover wrongdoing by the defendant before a claim will accrue. *See Fox v. Ethicon Endo-Surgery, Inc.*, 110 P.3d 914, 920 (Cal. 2005). Michigan has no such requirement.

Accordingly, BSC's Motion concerning Ms. Hay-Rewalt's claims for breaches of express and implied warranties is **GRANTED**, and these claims are **DISMISSED with prejudice**.

### B.      Nonwarranty Claims

Ms. Hay-Rewalt's non–breach of warranty claims began to accrue when "the wrong upon which the claim is based was done," Mich. Comp. Laws § 600.5827—that is, when Ms. Hay-Rewalt had her implantation surgery on June 5, 2007. (Pl. Fact Sheet [Docket 28-2], at 5). Because there is no postponement of her nonwarranty claims, the limitations period ran until June 5, 2010. *See* Mich. Comp. Laws § 600.5805(13) (2015) (providing three-year statute of limitations for products liability action); *Trentadue v. Buckler Automatic Lawn Sprinkler Co.*, 738 N.W.2d 664, 680 (Mich. 2007) (abolishing common-law discovery rule). Ms. Hay-Rewalt filed suit on December 30, 2012. (Pls.' Short Form Compl. [Docket 1]). As a result, her nonwarranty claims are time barred. Furthermore, because Mr. Rewalt's claim of loss of consortium is derivative to Ms. Hay-Rewalt's claims, and none of Ms. Hay-Rewalt's claims survive, Mr. Rewalt's claim is also time barred. Accordingly, BSC's Motion concerning Ms. Hay-Rewalt's claims for strict liability for design defect, manufacturing defect, and failure to warn; negligence; and punitive damages; and Mr. Rewalt's claim for loss of consortium is **GRANTED**, and these claims are **DISMISSED with prejudice**.

### IV.      Conclusion

As explained above, the defendant's Motion [Docket 28] is **GRANTED** and the plaintiffs' case is **DISMISSED with prejudice**. The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.


ENTER:          March 26, 2015

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE